UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ARON M., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 4:22-CV-413-CDL** |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the

Commissioner of the Social Security Administration (Commissioner) denying disability

benefits. The parties have consented to proceed before a United States Magistrate Judge in

accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court

**reverses** the decision of the Commissioner and **remands** the case for further proceedings

consistent with this Opinion and Order.

### I.    Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying

individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines

"disability" as an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

On August 22, 2019, the plaintiff filed an application for Title II disability insurance and protectively filed an application for supplemental social security income benefits. (R. 10). The plaintiff alleged that he became disabled on September 1, 2018, due to neck pain, back pain, knee pain, post-traumatic stress disorder, carpal tunnel, asthma, muscle spasms, and insomnia. (*See* R. 67-68). He was 48 years old on the alleged onset date. (R. 67). The plaintiff has a high-school education, and before his alleged disability, he worked as a carpenter and subcontractor in the construction industry. (*See* R. 39, 50).

The Commissioner denied the plaintiff's applications at the initial and reconsideration levels, with state agency consulting physicians finding insufficient medical evidence in the record to establish the severity of the plaintiff's impairments or his RFC. (*See* R. 67-106). The plaintiff then requested a hearing before an Administrative Law Judge (ALJ), who held a hearing by telephone on November 29, 2021. Testimony was given by the plaintiff and a vocational expert (VE). (*See* R. 28-54).

At the hearing, plaintiff testified that he is 5'8" tall, weighs 150 pounds, and is right-handed. (R. 35). The plaintiff testified that his previous work involved heavy-exertion tasks, such as lifting and hanging sheetrock or frames for residential or commercial construction projects. He indicated that he had to stop working in 2018 because of numbness and pain in his upper extremities, after "trying to work, but . . . losing money and not being able to get through the jobs." (R. 42). His symptoms were initially misdiagnosed as carpal tunnel syndrome, but an MRI in August 2018 revealed diffuse disc degeneration at C4-C5 and a "large right[-]sided extruded fragment extending inferiorly compressing the right hemicord and associated with abnormal intrinsic spinal cord signal." (R. 17; *see* R. 370). The plaintiff underwent neck surgeries in September and October of 2018. (*See* R. 17-18). He also has knee pain due to tearing in the right ACL and MCL, but testified that he could not afford the recommended knee replacement surgery. (R. 42).

The plaintiff testified that, as a result of his impairments, he can lift up to 15 pounds. He stated that he needs to use a cane in order to walk for more than 20 minutes at a time. (R. 44). He also has difficulty sitting because his knee stiffens, and when he stands up, he has spasms in his back and lower extremities. His knee also sometimes gives out. He

attended 40 to 50 physical therapy sessions, but he stopped attending because of insurance limitations. The plaintiff testified that when he attends his son's football games, he has to sit at the bottom of the bleachers because he cannot climb up and down stairs. (R. 47).

On December 17, 2021, the ALJ issued a decision denying disability benefits. (R. 10-26). On July 25, 2022, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-3). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's December 17, 2021 decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d

4

1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, the ALJ determined at step one that the plaintiff met the insured status requirements through June 30, 2021 and had not engaged in substantial gainful activity since his alleged onset date of September 1, 2018. (R. 12). At step two, the ALJ found that the plaintiff has severe impairments of degenerative joint disease of the knee, degenerative disc disease of the neck, and degenerative disc disease of the back. (R. 13). The ALJ found the plaintiff's alleged carpal tunnel syndrome is not medically determinable, his left shoulder limitations are non-severe, and there are no medically-determinable mental impairments. *Id.* At step three, the ALJ found the plaintiff's impairments do not meet or medically equal a Listing, specifically considering Listings 1.15, 1.16, and 1.18, relating to spinal and joint disorders. *Id*.

At step four, the ALJ determined that the plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). In support of this finding, the ALJ discussed the plaintiff's hearing testimony objective medical evidence, and prior administrative medical findings in the record. Citing the VE's testimony as to a hypothetical person with the plaintiff's RFC, the ALJ found that the plaintiff is unable to perform any past relevant work. (R. 20-21).

Accordingly, the ALJ proceeded to step five. The ALJ also found that the plaintiff was in the category of "younger individual" on his alleged onset date, but subsequently

aged into the "closely approaching advanced age" category. (R. 21). Considering a hypothetical person with the plaintiff's age, education, and work experience, with an RFC for the full range of light work, the ALJ found that under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App'x 2, the plaintiff is not disabled. *Id*.

## IV.    Discussion

The plaintiff argues that the ALJ's decision failed to provide an adequate narrative discussion to support the RFC determination for a full range of light work, particularly with respect to plaintiff's ability to stand and walk. He alleges that his combination of impairments precludes him from standing or walking for up to six hours in a workday, as is required to perform the full range of light-exertion work. The Commissioner argues that the ALJ properly considered the medical and other evidence in the record and that substantial evidence supports his decision.

The ALJ's written decision must "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996)[1] The ALJ must support the limitations included in the RFC determination with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id*.

---

[1]    A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite his medical impairments and symptoms. *Id*. at *2.

Here, the medical evidence was partially recounted in the ALJ's decision and includes the following:

- In February 2019 the plaintiff saw Brian Crotty, D.O. for primary care. Dr. Crotty noted that plaintiff continued to have neck and lower back pain, although it had improved some after his surgery. (R. 447). His knee pain had worsened. *Id.* An MRI of the thoracic and lumbar spine revealed numerous abnormalities, including severe multilevel disc disease, with Dr. Crotty finding multilevel spondylosis and degenerative disc changes, mild multilevel narrowing, narrowing with encroachment at T11-T12, and annular bulge noted at T2-T3. (R. 450).

- The following month, he was referred for additional imaging of his back. (R. 361; *see* R. 18). The ALJ noted that X-rays were taken, but that other than one chiropractic visit in August 2021, the plaintiff "never followed up with any type of chiropractic manipulation of his neck or back." (R. 18).[2] In December 2019, plaintiff reported that he continued to have low back pain, and Dr. Crotty observed muscle spasm and tenderness to palpation in the lower thoracic and lumbar areas. (R. 430). In May 2020, the plaintiff was prescribed Metaxalone and conservative treatment measures for muscle spasm and back pain. *Id.* Dr. Crotty noted muscle spasm in the lower thoracic

---

[2]     Although not mentioned in the ALJ's decision, the Court notes a report of Dr. Crotty on 12/20/19 that plaintiff "had been to some chiropractic treatments," casting doubt on the ALJ's finding that the plaintiff had failed to do so. (R. 430).

and upper lumbar areas but did not see any "obvious" limitation in movement, except that plaintiff complained of pain when standing up and climbing onto the exam table. (R. 425).

- Examination of the plaintiff's right knee in June 2019 found mild tenderness to palpation at the medial anterior joint line, some laxity on anterior drawer testing, and minimal pain on the valgus stress. (R. 444; *see* R. 18). He was instructed to use ice packs and a knee brace. In December 2020, plaintiff reported he had good control overall for his bilateral knee pain with pain medication. (R. 418; *see* R. 18).

- In January 2021 the plaintiff reported that he had been working odd jobs for money. Jason Griffin, M.D. noted an antalgic gait with a varus thrust, moderate effusion, and grade 2 valgus stress testing. (R. 541). Radiographic images were taken of the right knee and showed moderate to severe medial compartment, with patellofemoral degenerative joint disease. *Id*. The plaintiff was prescribed a knee brace, provided with steroid injection, and referred to physical therapy.

- Two weeks later, he saw John Balbas, M.D., who reported plaintiff continued to have pain, swelling and weakness, and over-the-counter medications were not controlling his pain. Dr. Balbas noted antalgic gait on the right side and observed anterior cruciate ligament (ACL) stability. X-rays revealed right-knee "significant subchondral sclerosis, medial bone on bone contact and diffuse osteophyte formation, but no acute fracture or dislocation," as well

as medial joint narrowing and subchondral sclerosis in the left knee, with less advanced degenerative changes than on the right side. (R. 545).

- Dr. Balbas ordered MRI imaging to rule out internal derangement of the right knee. *Id*. The MRI revealed normal degenerative changes with a possible meniscal tear and a chronic grade 3 sprain of the ACL, and chronic partial tearing/scarring of the proximal superficial medial collateral ligament (MCL). (R. 19). As noted in the ALJ's decision, Dr. Balbas noted that the claimant had significant loss of range of motion/joint deformity and recommended a total knee arthroplasty due to end-stage osteoarthritis. *Id*.

After summarizing the medical evidence, the ALJ concluded that the plaintiff retains the RFC to perform a full of range of light work.[3] The ALJ's decision acknowledged that the state agency medical consultants found there was insufficient evidence, but the ALJ found these opinions unpersuasive because "the medical records documented severe impairments." (R. 20). The ALJ explained that

> [t]he reason for this is the limitations are defined more by what is lacking in the file as opposed to what is present. The [plaintiff] had abnormal bilateral knee and back imaging. But[sic] did not document ongoing knee injections which earlier records found helped his condition. Nor did he document physical therapy or surgery on his knees to address the degenerative changes noted above. Also despite asserting the need for a cane to ambulate he was

---

[3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

> walking through a store when we contacted him for his hearing and
> was able to retreat to his car to conduct this hearing very swiftly.
>
> More inconsistent still, the medical records documented that despite
> his back and bilateral knee impairments, the [plaintiff's] gait was
> almost always normal. He has not been prescribed an assistive
> device. He has no impairment of the upper extremities despite his
> neck impairment. He did not experience any exacerbation of pain or
> symptoms requiring room ER[sic] visits or hospitalizations post
> surgically.

(R. 19) (citations omitted).

Although an ALJ is not required to discuss every piece of evidence, he or she must

consider the entire record and "must discuss the uncontroverted evidence [she] chooses not

to rely upon, as well as significantly probative evidence [she] rejects." *Mays v. Colvin*, 739

F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th

Cir. 1996)). An ALJ is also required to "explain how any material inconsistencies or

ambiguities in the evidence in the case record were considered and resolved" and to explain

why she did not adopt a medical opinion that conflicts with the RFC assessment. Social

Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.

The ALJ's narrative discussion suggests a few reasons for finding the medical

evidence did not warrant a more restrictive RFC: a lack of treatment or follow-up for the

plaintiff's documented back and knee abnormalities; a gait that was "almost always"

normal; the ALJ's personal observation of the plaintiff on the day of the virtual hearing;

and the fact that plaintiff's impairments did not require an ER visit or warrant prescription

of a cane. (The ALJ also noted a lack of "impairment of the upper extremities," but as the

issues raised on appeal are focused on his ability to stand and walk, that particular aspect

does not apply to these issues). The ALJ cited similar reasons for discounting the plaintiff's subjective statements about his ability to walk and lift/carry, noting that he failed to comply with medical advice to stop smoking, and that he missed group therapy sessions in connection with a term of probation. (R. 19-20). Additionally, the ALJ cited the plaintiff's self-reported daily activities, noting an August 2018 report to Dr. Crotty that the plaintiff had recently started coaching Little League football. (*See* R. 462). Finally, the ALJ listed statements plaintiff made in the record or to his providers that he was working odd jobs involving outdoor work, at one point worked at a company processing old vehicles, had been selling marijuana, and had received unemployment in 2021, "indicat[ing] he was at least telling one government agency that he was and is ready, willing, and able to work." (R. 20).

"[B]efore the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'" *Thompson v. Sullivan*, 987 F.2d 1482, 1490

(10th Cir. 1993);[4] *see also Lee v. Barnhart*, 117 F. App'x 674, 2004 WL 2810224, at *6

(10th Cir. 2004) (unpublished). A claimant's inability to afford medical care may

"provide[] an alternative explanation, other than lack of a severe impairment, for [the

claimant's] failure to obtain treatment." *Lee*, 2004 WL 2810224, at *6.

Here, the ALJ did not adequately address the relevant factors in weighing the

absence of medical evidence. In fact, the plaintiff testified that he had been unable to get

right knee surgery because he could not afford it. (*See e.g.* Tr. at 42). He also explained he

had attended physical therapy, but his insurance didn't cover it anymore. (Tr. at 44). The

ALJ expressed skepticism toward these reasons, noting that the plaintiff had "reported to

his doctor that he was doing odd jobs for money yet reportedly could not afford treatment

for his conditions as to why he failed to follow up with care." (R. 20). The ALJ also

appeared to heavily weigh the fact that plaintiff reported at times that he had attempted to

work. (*See id*. (noting the plaintiff made "statements to his own doctors . . . inconsistent

with the assertions he made at his hearing under oath")). However, the plaintiff's testimony

was not inconsistent with those statements—rather, the plaintiff acknowledged that he had

---

[4]      Under the revised regulations, the Commissioner no longer uses the term
"credibility." *See* SSR 16-3p, 2017 WL 5180304 (explaining purpose to "eliminat[e] the
use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as our
regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is
not an examination of an individual's character"). However, the agency continues to follow
the same "fundamental rule . . . that 'if an individual's statements about the intensity,
persistence, and limiting effects of symptoms are inconsistent with the objective medical
evidence and the other evidence, [an ALJ] will determine that the individual's symptoms
are less likely to reduce his or her capacities to perform work-related activities.'" *Zhu v.
Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 n.7 (10th Cir. July 6, 2021)
(unpublished) (quoting SSR 16-3p).

"tried to work," since his alleged onset date, "but . . . I can't do it." (R. 37). The ALJ did not cite anything inconsistent with that testimony.

Nor did the ALJ's decision adequately explain how the plaintiff would be able to maintain work on a consistent basis and perform the standing and walking required of light work, even if he was able to walk and/or showed a normal gait on some occasions. The ALJ's decision cited three instances when a normal gait was observed. (R. 19).[5] But the medical evidence undercuts the ALJ's characterization that the plaintiff's gait was "almost always" normal during his medical exams. In fact, the record contains just as many instances where abnormal gait was observed. (*See, e.g.*, R. 401 (noting plaintiff's "[g]ait is spastic" during examination on 8/30/2018); R. 541 (antalgic gait on 1/21/2021); R. 545 (antalgic gait on 2/1/2021); R. 550 (antalgic gait on 2/18/2021)). (*See also* R. 471 (noting low back pain when getting up and down; "some edema and tenderness to palpation of the right knee" during examination on 1/31/2018); R. 396 (9/28/2018 report of gait instability over previous months, but normal gait observed); R. 447 (observing "significant muscle spasm in the lower thoracic area bilaterally" and tenderness to palpation on 2/8/2019); R. 45 (plaintiff testified that his right knee will often "buckle")).

Although the ALJ indicated the plaintiff's alleged limitations are not consistent with his self-reported activities, including sporadic work attempts, as noted above, the plaintiff

---

[5]      In one instance cited in the ALJ's decision, the plaintiff was being seen for an upper respiratory infection, not musculoskeletal issues. (R. 442, cited in ALJ's decision as Ex. 3F at 37, 8/2/2019). The ALJ cited a fourth purported example of a normal gait, but in that instance, the provider in fact observed an antalgic gait on the right side. (R. 545 (cited in ALJ's decision as Ex. 10F at 8)).

reported that he was unable to sustain any work. (R. 37). Although the plaintiff informed Dr. Crotty in 2018 that he had started coaching Little League football, the record shows that he had neck surgeries in the following months, and at the time of the hearing in 2021, the plaintiff testified that he could no longer play football and could not climb up the bleachers when attending his son's games. (R. 47).

Thus, the ALJ relied on a selective reading of the evidence while ignoring evidence that would tend to "bolster, rather than undermine" the plaintiff's complaints of pain and limited functionality." *Kellams v. Berryhill*, 696 F. App'x 909, 915 (10th Cir. 2017). "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); s*ee also Farris v. Berryhill*, CIV-17-255-BMJ, 2018 WL 387807, at *2 (W.D. Okla. Jan. 11, 2018) (explaining that "[p]icking and choosing from the record is an impermissible practice and one necessitating remand").

Furthermore, no physician provided a medical opinion or administrative findings supportive of the ALJ's RFC determination. The RFC for light work would still require "a good deal of walking or standing"—up to approximately six hours of an 8-hour workday. *See* 20 CFR § 416.967(b); SSR 83-10, 1983 WL 31251, at *6. The ALJ's decision did not explain how the plaintiff could safely perform the standing and walking required of light work on a consistent basis.

Remand is therefore necessary for further explanation sufficient to enable meaningful review of the ALJ's reasoning in light of the record as a whole. *See Clifton,* 79 F.3d at 1009 (holding that "[i]n the absence of ALJ findings supported by specific weighing

of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's

conclusion," and thus the ALJ's unexplained conclusion was "beyond meaningful

review"); *see also Natalie L.F. v. Kijakazi*, No. 20-CV-376-JFJ, 2022 WL 265870, at *4,

*5 (N.D. Okla. Jan. 28, 2022) (finding the ALJ selectively cited evidence favorable to his

finding of non-disability, "found all the medical opinions of record unpersuasive[,] and

found [the plaintiff's] subjective complaints not entirely consistent with the record, leaving

the Court unable to determine what evidence or medical opinions, if any, support the RFC

assessment"). As part of this analysis, the ALJ should determine whether further

development of the record is appropriate.[6] Here, the ALJ rejected the prior administrative

findings that the record lacks sufficient evidence of a severe impairment—thus, the plaintiff

satisfied the initial "burden to make sure there is, in the record, evidence sufficient to

suggest a reasonable possibility that a severe impairment exists." *Flaherty v. Astrue*, 515

F.3d 1067, 1071 (10th Cir. 2007). In that context, "the ALJ has a duty to ensure that an

adequate record is developed during the disability hearing consistent with the issues

raised.'" *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (quoting *Flaherty*, 515 F.3d

at 1071).

---

[6]     The Commissioner argues that the plaintiff waived any argument that the ALJ failed
to develop an adequate record. But the plaintiff's brief clearly asserts that the ALJ could
not properly rely on the plaintiff's failure to pursue treatment, when the plaintiff presented
evidence that he could not afford further surgeries or physical therapy. (*See* Doc. 13 at 10-
11).

## V.      Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is not consistent with the applicable legal standards or supported by substantial evidence. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

DATED this 20th day of December, 2023.

Christine D. Little
United States Magistrate Judge